# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | | |
|---|---|---|
| SHERIDON SHELBY, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:18-CV-0532-B |
| | § | |
| KWIK KAR / GUIDE STAR, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

This is an employment-discrimination case. On January 7, 2019, after receiving a status report, the Court became concerned that the employer did not have the requisite number of employees to be covered by Title VII of the Civil Rights Act of 1964, and ordered limited discovery into that issue. Doc. 69, Order, 1–2. On March 14, 2019, the Court requested supplemental briefing, and notified the parties that it planned to *sua sponte* consider summary judgment if there continued to be no dispute as to that issue. Doc. 72, Order, 5 (citing Fed. R. Civ. P. 56(f)(3)).

Reviewing the available evidence, the Court concludes that there is no genuine issue of material fact in dispute that Title VII does not cover Plaintiff's former employer. As such, the Court **GRANTS** summary judgment for Defendant.

## I.

## BACKGROUND

*Pro se* Plaintiff Sheridon Shelby brings an employment-discrimination claim for alleged discrimination that took place from January to September 2017, when he was fired from his employment at Defendant Kwik Kar. Doc. 3, Compl., 8 (EEOC form describing the discrimination

from January 31, 2017 to September 8, 2017). Plaintiff worked at the Kwik Kar on 5020 Lemmon

Avenue, which was sold while the alleged discrimination took place. Doc. 59, Ans., 1; Doc. 71, Pl.'s

Resp., 4 (Texas Workforce Commission appeal form). He alleges that he was discriminated against

for being black, while Hispanic employees were preferentially treated, even those who he alleges were

undocumented immigrants.[1] Doc. 3, Compl., 1–4. Plaintiff has sued the new owners, who bought the

business on June 27, 2017. Doc. 59, Ans., 1; Doc. 73-1, Def.'s Suppl. App., 12 (buyer's settlement

statement showing the purchase of 5020 Lemmon Avenue through RMEE Inc.[2]). Plaintiff reports

that another entity, GideStar (sometimes referred to as Guide Star), was also involved in the

business, as it was listed as paying Plaintiff's payroll taxes. Doc. 71, Pl.'s Resp., 1. Indeed, both entities

are owned by Laila Sajan. Doc. 67, Def.'s Initial Disclosures, 1 (describing a "Gidestar, Inc." and

RMEE, Inc. d/b/a Kwik Kar on Lemmon). But Defendant denies that Plaintiff and Kwik Kar were

associated with GideStar.[3] Doc. 59, Ans., 1.

---

[1] As the Fifth Circuit has instructed, this Court has liberally construed this *pro se* complaint, taking all well-pleaded allegations as true. *See Johnson v. Atkins*, 999 F.2d 99, 100 (5th Cir. 1993) (per curiam). But insofar as Plaintiff includes these allegations about undocumented workers in an attempt to have this Court enforce federal immigration laws, the Court finds no indication that Congress has intended civilians to have a private right of action to enforce federal immigration law. *See Tex. Health & Human Servs. Comm'n v. United States*, 193 F. Supp. 3d 733, 739 (N.D. Tex. 2016) (citing *Alexander v. Sandoval*, 532 U.S. 275, 286 (2001)). Nor does Plaintiff point the Court to such authority. *See id.* ("[C]ourts presume that Congress did not intend to create a private right of action. To overcome this presumption, a plaintiff must demonstrate 'that Congress affirmatively contemplated private enforcement when it passed the relevant statute.'" (quoting *La. Landmarks Soc'y, Inc. v. City of New Orleans*, 85 F.3d 1119, 1123 (5th Cir. 1996)) (internal citations omitted)).

[2] Throughout this opinion, references to Kwik Kar also refer to RMEE, Inc., as they are the same. Doc. 73-1, Def.'s Suppl. App., 2 ¶ 2.

[3] And to date, the only individuals who have appeared in court for Defendant are Rahil Sajan and Munira Sajan, Doc. 40, Elec. Minute Entry; although Laila Sajan is listed as reachable through Defendant's attorney. Doc. 67, Def.'s Initial Disclosures, 1.

As discussed above, on January 7, 2019, the Court became concerned that Defendant did not have the requisite number of employees to be covered by Title VII, and ordered limited discovery into that issue. Doc. 69, Order, 1–2. Both parties responded. Doc. 70, Def.'s Resp; Doc. 71, Pl.'s Resp. On March 14, 2019, the Court requested supplemental briefing, and notified the parties that it planned to *sua sponte* consider summary judgment if there continued to be no dispute as to that issue. Doc. 72, Order, 5 (citing Fed. R. Civ. P. 56(f)(3)). Defendant responded with additional evidence (Doc. 73); Plaintiff reiterated his request for a jury trial and outlined his evidence for discrimination, but did not argue that the numerosity requirement was met (Doc. 74). As the time for additional briefing has passed, the Court now considers the numerosity issue.

## II.

## LEGAL STANDARD

At the summary-judgment stage, the court considers whether there are genuine issues of material fact in dispute. At this stage, the pleadings are not summary judgment evidence. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). The nonmoving party must "go beyond the pleadings and by [his] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Giles v. General Elec. Co.*, 245 F.3d 474, 493 (5th Cir. 2001) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)). A court is to resolve all factual controversies in favor of the non-movant, "but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts. We do not, however, in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts." *Liquid Air*, 37 F.3d at 1075.

# III.

## ANALYSIS

Anti-discrimination employment law does not apply to all businesses. It applies only to employers with fifteen or more employees for the year in which the discriminatory acts took place, and the preceding year. 42 U.S.C. § 2000e(b) ("The term 'employer' means a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year. . ."); Tex. Labor Code § 21.002 (substantively similar definition); *see also Vance v. Union Planters Corp.*, 209 F.3d 438, 446 (5th Cir. 2000) (holding the "current year" in § 2000e(b) refers to the year in which the discriminatory acts took place). This "numerosity requirement" is an indispensable element of an employment discrimination claim. *See Arbaugh v. Y&H Corp.*, 546 U.S. 500, 516 (2006). Put simply, unless Defendant had over fifteen workers in 2016 and 2017, Plaintiff cannot bring a claim.

If there is a question as to whether a *particular* defendant is an employer under Title VII, courts in the Fifth Circuit look to two tests: (1) the hybrid economic realities/common law control test; and (2) the single employer test. *Davenport v. HansaWorld USA, Inc.*, 23 F. Supp. 3d 679, 692 (S.D. Miss. 2014) (applying these two tests to determine whether an additional defendant had employer status). For the hybrid economic realities/common law control test, a court first determines whether the defendant falls within the statutory definition of an employer and then considers the potential employer's right to control the employee's conduct:

> Determining whether a defendant is an "employer" under Title VII involves a two-step process. First, the court must determine whether the defendant falls within Title VII's statutory definition of an "employer." Title VII defines an "employer" as "a person engaged in an industry affecting commerce who has fifteen or more

employees . . . , and any agent of such a person. . . ." If the defendant meets this definition, the court must then analyze whether an employment relationship exists between the plaintiff and the defendant.

> To determine whether an employment relationship exists within the meaning of Title VII, we apply a hybrid economic realities/common law control test. The most important component of this test is the right to control the employee's conduct. When examining the control component, we have focused on whether the alleged employer has the right to hire, fire, supervise, and set the work schedule of the employee. . . . The economic realities component of the test focuses on whether the alleged employer paid the employee's salary, withheld taxes, provided benefits, and set the terms and conditions of employment.

*Schirle v. Sokudo USA, L.L.C.*, 484 F. App'x 893, 897 (5th Cir. 2012) (quoting *Muhammad v. Dallas Cnty. Cmty. Supervision & Corrs. Dep't.*, 479 F.3d 377, 380 (5th Cir. 2007)).

In addition to this test, "superficially distinct entities may be exposed to liability upon a finding that they represent a single, integrated enterprise"; in other words, this is the single employer test. *Schirle*, 484 F. App'x at 898 (quoting *Trevino v. Celanese Corp.*, 701 F.2d 397, 404 (5th Cir. 1983). "Factors considered in determining whether distinct entities constitute an integrated enterprise are (1) interrelation of operations, (2) centralized control of labor relations, (3) common management, and (4) common ownership or financial control." *Trevino*, 701 F.2d at 404. "Courts applying this four-part standard in Title VII and related cases have focused on the second factor: centralized control of labor relations." *Id.* This boils down to the question of: "What entity made the final decisions regarding employment matters related to the person claiming discrimination?" *Id.*

Both parties were required to submit a brief at the close of the limited discovery period and present evidence as to the number of employees Defendant employed at the time of the alleged discrimination. Doc. 69, Order, 1–2. Defendant attached a print-out of a wage report from July 2017 to September 2017, but it was not authenticated. Doc. 70-1, Def.'s Ex. A. Plaintiff also responded

to the Court's request. He did not appear to dispute the fact that there were less than fifteen employees at the time of the alleged discrimination. *See generally* Doc. 71, Pl.'s Resp. He did describe the confusion that has resulted because the name of his employer has been alternatively listed as Kwik Kar and Guide Star in documents with the Equal Employment Opportunity Commission and the Texas Workforce Commission. *Id.* at 7. For example, it is alleged that GideStar paid Plaintiff's payroll taxes, and thus was at least peripherally involved in the Kwik Kar business. And Plaintiff correctly pointed out that the EEOC Charge Form placed Kwik Kar in a category of employers with "15-100" employees. *See* Doc. 3, Compl., 8. Thus, out of an abundance of caution, the Court requested supplemental briefing as to whether GideStar might have been sufficiently intertwined with Kwik Kar as to also be considered Plaintiff's employer.

The Court has reviewed the supplemental briefing provided, and can find no evidence that Plaintiff was employed by an entity with more than the requisite fifteen employees to be covered by the statute. Neither Kwik Kar nor GideStar had enough employees to be employers under the Act. *See Schirle*, 484 F. App'x at 897 (describing the first step of the hybrid economic realities test as an inquiry into numerosity); Doc. 73-1, Def.'s Suppl. App., 2 ¶¶ 5, 9 (Sajan Aff.); *id.* at 10 (Gidestar's 2016 annual report showing only seven employees); *id.* at 14–15 (RMEE's quarterly tax returns showing a maximum of nine employees for 2017). In fact, GideStar appears to have been defunct by the time of the alleged discrimination. *Id.* at 2 ¶¶ 6–8 (Sajan Aff.); *id.* at 7 (Gidestar's 2016 tax return). In any event, there is insufficient evidence of the four factors—(1) interrelation of operations, (2) centralized control of labor relations, (3) common management, and (4) common ownership or financial control—to combine Kwik Kar with any other entity. *See Trevino*, 701 F.2d

at 404. In other words, Plaintiff has not met his burden to show that GideStar and Kwik Kar should be treated as a single employer.

As the numerosity requirement for a Title VII claim is not met, the Court **GRANTS** summary judgment under Federal Rule of Civil Procedure 56(f)(3) in favor of Defendant, and Plaintiff's claims are hereby **DISMISSED**, with each party to bear its own costs.[4] A final judgment will follow.

SO ORDERED.

SIGNED  May 2, 2019.

_____
JANE J. BOYLE
UNITED STATES DISTRICT JUDGE

---

[4] To the extent Plaintiff's claims include any remaining state- or common-law causes of action, the Court declines to exercise supplemental jurisdiction over them per 28 U.S.C. § 1367(c)(3).